# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7021 | **DATE** | 2/23/2004 |
| **CASE TITLE** | AMERICAN TOP ENGLISH, INC. vs. GOLDEN GATE CAPITAL, L.P. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Golden Gate Capital, L.P.'s motion to dismiss [10-1] is denied. Golden Gate Capital, L.P. shall answer by March 2, 2004. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. AND | | | |
| X | Notified counsel by telephone. | | FEB 2 5 2004 date docketed | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | JXM docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 2/23/2004 date mailed notice | |
| CB | courtroom deputy's initials | 04 FEB 24 PM 2:59 | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

AMERICAN TOP ENGLISH, INC. )
)
               Plaintiff, )   No. 03 C 7021
)
   v. )   Suzanne B. Conlon, Judge
)
GOLDEN GATE CAPITAL, L.P, )
)
             Defendant. )

## MEMORANDUM OPINION AND ORDER

In this diversity action, American Top English ("American") sues Golden Gate Capital

("Golden Gate") for breach of contract and violations of the Illinois Franchise Disclosure Act

("IFDA"), 815 ILCS 705/1, *et seq.*, and Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 ILCS 505/1, *et seq.* Golden Gate responds with a motion to dismiss for lack

of personal jurisdiction, improper venue and insufficiency of service of process pursuant to Fed.

R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(5).

## BACKGROUND

American is an Illinois corporation headquartered in Chicago. Compl. at ¶ 3. Golden

Gate is a private equity investment firm incorporated under Delaware law and headquartered in

San Francisco, CA. *Id.* at ¶ 4. American is in the business of selling a popular videocassette

language course called "Ingles Sin Barreras," – literally, "English Without Borders" – an

instructional video that teaches English to Spanish speakers. *Id* at ¶ 3. American does not

produce the course itself, nor does it develop the course's content. Instead, it has the exclusive

rights to distribute the video course in parts of Illinois, Indiana, Wisconsin and Arizona, pursuant

1



to a series of distribution agreements. *Id.* at ¶¶ 7-24. According to American, Golden Gate is a party to these contracts under an asset purchase agreement or assignment. This dispute centers on the rights and responsibilities flowing from these three contracts.

The first agreement was executed in 1990 ("1990 agreement"). *Id.* at ¶¶ 7-12. Alejandro Daniel Itkin, American's president, negotiated the agreement with Hispanic-American Educational Materials, Inc. ("HAEM"), the original producer of "Ingles Sin Barreras." *Id.* Itkin subsequently assigned his interest in the agreement to American. *Id.* The 1990 agreement granted American the right to distribute the video course within the 312 and 708 area codes. *Id.* The agreement required American to advertise individually. However, HAEM pledged to advertise nationally. The 1990 agreement set forth a schedule for apportioning sales generated by HAEM's national advertising within American's exclusive distribution area. *Id.* The agreement required American to purchase sales kits and a certain amount of video courses to activate its distribution rights. *Id.* To retain these exclusive distribution rights, American was required to purchase additional video courses each month. *Id.* HAEM was obligated to ensure timely delivery of American's inventory needs. Sometime prior to May 1, 1994, HAEM's interest in the agreement was assigned to its successor, Hispaem of California, Inc. ("Hispaem"). *Id.* at Ex. B. According to American, Hispaem's rights in the agreement were eventually assigned to Golden Gate. In the complaint, American alleges Golden Gate breached the 1990 contract by selling video courses in Illinois, within American's exclusive distribution area.

In 1994, American entered into a second distribution agreement ("1994 agreement") with Hispaem. Compl., Ex. B. The 1994 agreement granted American exclusive distribution rights in Arizona. *Id.* Like the 1990 agreement, the 1994 agreement required American to purchase a

2

minimum number of video courses each month, as well as an initial purchase of sales kits and video courses. *Id.* The 1994 agreement included a forum selection clause, which required the parties to file suit in California to enforce the agreement. *Id.* According to American, Hispaem's interest in the 1994 agreement has been assigned to Golden Gate. American alleges Golden Gate breached the agreement by competing with American in Arizona.

In 1997, American and Hispaem executed a handwritten letter agreement ("1997 agreement") that modified the 1990 and 1994 agreements.[1] Compl. at ¶¶ 18-27. Importantly, the 1997 agreement enlarged the scope of American's distribution zone to include Wisconsin and Indiana. *Id.* Like the previous agreements, the 1997 agreement required American to purchase video courses and sales kits, as well as maintain certain sales levels to retain distribution rights. *Id.* According to American, Hispaem's rights and obligations under this agreement were assigned to Golden Gate. American alleges Golden Gate breached the 1997 agreement in two ways: Golden Gate improperly terminated the 1997 agreement on October 8, 2001; and, Golden Gate sold video courses in Indiana and Wisconsin in violation of American's exclusive distribution rights.

Because Golden Gate was not an original party to these agreements, American has tendered evidence in an attempt to establish Golden Gate's liability as a successor to Hispaem. Chief among this documentation is a January 15, 2003 assignment agreement between Lexicon

---

[1]Golden Gate contends the 1997 agreement incorporated terms from the 1994 agreement. Specifically, Golden Gate argues that the 1997 agreement incorporated the forum selection clause contained in the 1994 agreement. This interpretation is not obvious, and Golden Gate does not explain its reading of the agreement. In the complaint, American alleges the 1997 agreement merely modified terms of the 1990 agreement extending the scope of its exclusive distributorship to include Wisconsin and Indiana. Resolution of this dispute requires interpretation of the agreement. On a motion to dismiss, the plaintiff's interpretation must be accepted.

Marketing International Limited ("LMI") and American. Pl's Opp., Ex. A. LMI is a portfolio

company of Golden Gate. The assignment agreement establishes that Hispaem's rights in the

three distribution agreements were succeeded by Lexicon Marketing Corporation ("LMC").

LMC then entered into an asset purchase agreement with LMI, whereby LMI purchased

"substantially all of the assets" of LMC, including LMC's contract with American. *Id.*

American consented to the assignment. *Id.* The assignment agreement is supported by an

affidavit from American's president, Alejandro Itkin. Pl's Opp., Ex. L. Itkin attests that Golden

Gate is Hispaem's successor in interest via the network of assignments discussed above.

According to Itkin, Golden Gate has continued to fill American's needs under the distribution

agreements by providing American with marketing materials, telephone leads and video courses.

*Id.* at ¶ 20.

## DISCUSSION

### I.    Personal Jurisdiction

Golden Gate contends it is not subject to personal jurisdiction in Illinois because it is not

the successor in interest to American's distribution contracts. According to Golden Gate the

agreements are an insufficient basis to establish jurisdiction. American has the burden of

demonstrating that this court has personal jurisdiction over Golden Gate. *Purdue Research*

*Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003) (plaintiff must

make out a *prima facie* case of personal jurisdiction); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d

4

1272, 1276 (7th Cir. 1997)[2]. In deciding a motion to dismiss for lack of personal jurisdiction, all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit. *Willard v. Ingersoll-Rand Co.*, No. 03 C 4665, 2003 WL 22175582 (N.D.Ill. 2003). Conflicts in affidavits or pleadings are resolved in American's favor; the court accepts unrefuted facts offered by defendants as true. *Interlease Aviation Investors II (Aloha) L.L.C., et al. v. Vanguard Airlines*, Inc., 262 F. Supp.2d 898, 905 (N.D.Ill. 2003).

This court has jurisdiction over Golden Gate if an Illinois court would have jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). An Illinois court may exercise jurisdiction over a nonresident defendant to the extent permitted by the Illinois and United States Constitutions. 735 ILCS 5/2-209(c); *Hyatt Int'l Corp.*, 302 F.3d at 713. The allegations in the complaint and the evidence attached to American's opposition are insufficient to establish general jurisdiction over Golden Gate. Taken as true, they merely show that Golden Gate had a business relationship with an Illinois distributor and occasionally sold video tapes in Illinois. They do not demonstrate that Golden Gate had continuous and systematic contacts with Illinois. *See RAR, Inc.*, 107 F.3d at 1277, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Accordingly, American must establish that Golden Gate's contacts with Illinois gave rise to this lawsuit.

To establish specific jurisdiction, American must demonstrate Golden Gate "purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz*, 471

---

[2]Golden Gate erroneously states that American must establish personal jurisdiction by a preponderance of the evidence. This standard applies only when the district court holds an evidentiary hearing. If the court rules on a motion to dismiss based on written submissions, the plaintiff must only establish a *prima facie* case. *Purdue Research Foundation*, 338 F.3d at 782.

U.S. 462, 476-77 (1985). Whether Golden Gate had sufficient minimum contacts with Illinois depends on whether it could "reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980). These contacts may not be fortuitous or attenuated. Instead, this requirement is satisfied when the defendant purposefully directs his activities at the forum state and the litigation arises from injuries caused by those activities. *Burger King Corp.*, 471 U.S. at 474.

Golden Gate essentially argues that American has sued the wrong party: "Golden Gate Capital, L.P.", the named defendant, does not exist, and therefore cannot be the successor in interest to Hispaem. If Golden Gate is not Hispaem's successor in interest, Hispaem's contacts with Illinois due to the distribution agreements cannot be imputed to Golden Gate. American asserts it has sued the correct party. In support of this position, it tenders the assignment agreement, Pl's Opp., Ex. A, and Itkin's affidavit. Pl's Opp., Ex. L. American also submits printouts from Golden Gate's website, the California Secretary of State and Dun & Bradstreet reflecting the existence of the named defendant, Golden Gate Capital, L.P.

As noted above, American bears the burden of establishing jurisdiction over Golden Gate. While the Dun & Bradstreet reports indicate that Golden Gate Capital, L.P. – the named defendant – is the proper defendant, the reports are merely starting points because they are uncertified and not necessarily reliable. *See Salon Group, Inc. v. Salberg*, 156 F. Supp.2d 872, 878-79 (N.D. Ill. 2001) (noting Dun & Bradstreet reports often contain inaccuracies, and alone are insufficiently reliable); *Int'l Ins. Co. v. SACO Defense Inc.*, No. 98 C 3628, 1998 WL 939680, at *2-3 (N.D. Ill. Jan. 8, 1998) (Dun & Bradstreet reported erroneous address and corporate status). The printout from the California Secretary of State's website is similarly

informative but non-dispositive because the report states that it is not a "complete or certified record." Pl's Opp., Ex. C. If American rested on these reports alone, it could not establish a *prima facie* case for jurisdiction. American tenders additional evidence establishing that jurisdiction over Golden Gate is proper. The assignment agreement strongly indicates that LMI, a Golden Gate portfolio corporation, is the ultimate successor in interest to HAEM and Hispaem's original distribution agreements with American.[3] Pl's Opp., Ex. A. The agreement states that LMI purchased substantially all of LMC's assets, including its distribution agreements with American. *Id.; see also Purdue Research Foundation*, 338 F.3d at 783-85 (corporate successor assumes predecessor's contacts for purposes of personal jurisdiction when it purchases substantially all of the predecessor's assets). Moreover, Itkin attests that he has continued to receive video courses, leads and sales materials since the assignment. Itkin Aff. at ¶¶ 19-21. LMI's continuing involvement in the distribution agreement by providing these materials to its Illinois client is a direct contact that may be attributed to Golden Gate. Furthermore, American's allegations that Golden Gate sold video courses in Illinois in violation of the 1990 agreement are uncontroverted.

American's evidence is contradicted by the affidavit of Jesse Rogers, the managing director of Golden Gate Private Equity, Inc. He attests he is unaware of any entity named Golden Gate Capital, L.P., the named defendant. Rogers Aff. at ¶¶ 2-4. He further states Golden Gate

_____

[3]Golden Gate's account of the legal relationships between HAEM, Hispaem, LCM, LMI and Golden Gate is confusing and inconsistent. In its motion to dismiss, Golden Gate repeatedly states there is no legal relationship between HAEM and Golden Gate. These statements are non-responsive to the issue of personal jurisdiction. The complaint and supporting materials show the assignments began with HAEM, and progressed in order from HAEM, to Hispaem, to LCM and finally to LMI, Golden Gate's portfolio company.

Private Equity, Inc. does not own any portfolio corporations that distribute "Ingles Sin Barreras."

As American points out, Rogers' statements do not establish that Golden Gate, L.P., the named

defendant, does not exist. Although Rogers' affidavit conflicts with the evidence tendered by

American, American's evidence must be taken as true. After piecing together the 1990, 1994,

1997 and assignment agreements, the line of succession establishes a *prima facie* case that

Golden Gate is the ultimate successor in interest to HAEM/Hispaem's original distribution

agreements. Despite Golden Gate's cursory argument to the contrary, as a successor in interest,

Golden Gate is deemed responsible for the contacts of its predecessors. *See Purdue Research*

*Foundation*, 338 F.3d at 783-85. As a continuing participant in a distribution contract that

required it to share marketing leads and to send video courses and promotional materials to

Illinois, Golden Gate has minimum contacts with Illinois.[4]

## II.     Venue

Golden Gate moves to dismiss American's complaint for improper venue based on the

forum selection clause found in the 1994 agreement. Golden Gate further asserts that the 1997

agreement incorporates the 1994 forum selection clause. Ordinarily, when a contract dispute

arises over an agreement containing a forum selection clause with sufficiently mandatory

language, the forum selection clause should be enforced, and the action should be dismissed

---

[4]Golden Gate does not argue that the Arizona contract and the Indiana and Wisconsin contracts are unrelated to its Illinois contacts. *See ABN Amro Sage Corp. v. Cohen*, No. 03 C 3556, 2003 WL 22057449, at *3-4 (N.D. Ill. Sept. 3, 2003) (injury must arise out of forum contacts for personal jurisdiction). Nor does it argue the mere negotiation of the 1994 and 1997 agreements in Illinois is insufficient to establish jurisdiction. *See RAR*, 107 F.3d at 1277. In any case, American alleges there is jurisdiction because negotiation and execution of these agreements in Illinois constitute violations of the Illinois Franchise Disclosure Act. 815 ILCS 705/1, *et seq.*

pursuant to Fed. R. Civ. P. 12(b)(3). *See Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 WL 22284207 (N.D. Ill. Oct. 3, 2003). However, under Illinois law there is an exception. The Illinois Franchise Disclosure Act voids forum selection clauses in franchise agreements. 815 ILCS 705/4 ("Any provision in a franchise agreement that designates jurisdiction or venue outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State"). American alleges the three distribution agreements constitute franchise agreements because they gave American the exclusive right to distribute video courses for a franchise fee. Compl. at ¶¶ 29-37. Golden Gate has not challenged this contention. On a motion to dismiss, the court accepts these allegations as true. American has stated a colorable claim under the IFDA. *See TLMS Motor Corp. v. Toyota Motor Dist., Inc.*, No. 95 C 1180, 1998 WL 182475, at * 3-5 (N.D. Ill. April 15, 1998) (discussing elements of franchise under Illinois law and finding that marketing and inventory requirements may constitute indirect franchise fee); *Flynn Beverage Inc. v. Seagram & Sons, Inc.*, 815 F. Supp. 1174, 1179 (N.D. Ill. 1993) (franchise fee may be indirect in that the franchisee is required to purchase inventory and other materials upfront). Thus, the forum selection clauses are invalid, and may not be enforced. *Flynn Beverage*, 815 F. Supp. at 1177-78 (applying IFDA on motion to dismiss and finding that the express terms of the act preclude waiver of § 705/4). Because substantial events or omissions giving rise to American's claims occurred in this district, venue is proper in the Northern District of Illinois. 28 U.S.C. § 1391(a).

III.    Service

American served Golden Gate on December 18, 2003. After repeated attempts to serve Jesse Rogers, a Golden Gate officer, a copy of the complaint and summons was left with Myrna

Balangue-Kwok, a Golden Gate receptionist. Rogers Aff. at ¶ 6; Pl's Opp., Ex. Q. Belangue-Kwok is not Golden Gate's registered agent. Golden Gate argues it was improperly served. American bears the burden of establishing that Golden Gate was properly served. *Baker v. Kingsley*, 294 F. Supp.2d 970, 979 (N.D. Ill. 2003). Fed. R. Civ. P. 4(h)(1) provides that a corporation may be served in the manner prescribed by Fed. R. Civ. P. 4(e)(1). Under Rule 4(e)(1), service may be effected under the laws of the state in which the district court is located, or in which service is effected.

Golden Gate contends it was improperly served because California law requires personal service to be effected on either a corporate officer or the corporation's registered agent. Cal. Civ. Proc. Code § 416.10(a), (b). American admits it did not serve a corporate officer or a registered agent. However, it contends service was nevertheless proper under Cal. Civ. Proc. Code § 415.20, which provides for substitute service when previous attempts at personal service have failed. Section 415.20(b) provides that when personal service has failed despite reasonable diligence, a copy of the complaint and summons may be left at the corporation's usual place of business with a person who is apparently in charge. American tried to serve Golden Gate four times. Pl's Opp., Ex. Q. This satisfies the reasonable diligence requirements of § 415.20. *See Ellard v. Conway*, 94 Cal. App. 4th 540, 544-46 (Cal. Ct. App. 2001) The only question is whether service of Belangue-Kwok is sufficient. The Judicial Council Comments to § 415.20 approve substitute service to a person who is apparently in charge of the office, such as the personal secretary of the person to be served. It is unclear whether Belangue-Kwok was the personal secretary of a corporate officer. Rogers identifies her as an assistant. American submits minimal evidence suggesting Belangue-Kwok appeared to be in charge, and the process server's

10

affidavit merely identifies her as a "Jane Doe" secretary and mentions her physical characteristics. Pl's Opp., Ex. Q. Nevertheless, California law liberally construes the substitute service statute in favor of finding service proper, *especially* when the party received actual notice. *See Ellard*, 94 Cal. App. 4th at 544-46 (service proper over individual when left with cashier at post-office box store). Golden Gate had actual notice of American's lawsuit. Golden Gate was not prejudiced by substitute service and American's method of service was reasonably calculated to ensure proper delivery of the complaint and summons. *See id.* at 547. American has established that Golden Gate was properly served under California law.

Golden Gate contends the action should be dismissed because service was untimely. Golden Gate has not demonstrated that it was prejudiced by the two business day delay, and Golden Gate was served within 120 days in accordance with Fed. R. Civ. P. 4(m). Moreover, American made a good faith effort to comply with this court's scheduling order.

## CONCLUSION

Golden Gate's motion to dismiss for lack of personal jurisdiction, improper venue, and improper service is denied.

February 23, 2004                                    ENTER:

Suzanne B. Conlon
United States District Judge

11