# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7021 | **DATE** | 6/18/2004 |
| **CASE TITLE** | AMERICAN TOP ENGLISH, INC. vs. LEXICON MARKETING (USA), INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss [32-1] is granted in part and denied in part. Count I is dismissed with prejudice. Count II is dismissed without prejudice to the extent it alleges a claim for material misrepresentation, and with prejudice to the extent it alleges a claim for economic price discrimination under the Illinois Consumer Fraud Act. Count III is dismissed without prejudice to the extent it alleges breaches of the 1994 and 1997 agreements. Defendant shall answer the surviving breach of contract claim based on the 1990 agreement as alleged in Count III by July 2, 2004. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 21 2004 | 42 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | JXM docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 6/18/2004 date mailed notice | |
| CB | courtroom deputy's initials | PW mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN TOP ENGLISH, INC., | ) | **DOCKETED** |
| Plaintiff, | ) No. 03 C 7021 | JUN 2 1 2004 |
| v. | ) Suzanne B. Conlon, Judge | |
| LEXICON MARKETING (USA), INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

American Top English ("American") originally sued Golden Gate Capital, L.P. ("Golden Gate") for breach of contract and violations of the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1, *et seq.*, and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* On February 23, 2004, this court denied Golden Gate's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(5). *American Top English, Inc. v. Golden Gate Capital, L.P.*, No. 03 C 7021, 2004 WL 407031, at *1 (N.D. Ill. Feb. 25, 2004). Thereafter, the parties stipulated to the dismissal of Golden Gate because it was not the proper party defendant. Docket No. 27, 4/16/04. Simultaneously, American filed its first amended complaint, substituting Lexicon Marketing (USA), Inc. ("Lexicon") as defendant and alleging identical causes of actions. Lexicon moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6).

## BACKGROUND

The following facts are taken from American's amended complaint. American is an Illinois corporation headquartered in Chicago. Am. Compl. at ¶ 3. Lexicon is a Delaware corporation with

1



its principal place of business in Los Angles, California. *Id.* at ¶ 4. American is in the business of selling a popular videocassette language course called "Ingles Sin Barreras," literally, "English Without Borders" – an instructional video that teaches English to Spanish speakers. *Id.* at ¶ 3. American does not produce the course itself, nor does it develop the course's content. Instead, it has distribution rights for the video course in parts of Illinois, Indiana, Wisconsin and Arizona, pursuant to a series of distribution agreements. *Id.* at ¶¶ 7-24. According to American, Lexicon is a party to these contracts under an asset purchase agreement or assignment. This dispute centers on the rights and responsibilities flowing from three contracts.

The first agreement was executed in 1990 ("1990 agreement"). *Id.* at ¶¶ 7-12. Alejandro Daniel Itkin, American's principal, negotiated the agreement with Hispanic-American Educational Materials, Inc. ("HAEM"), the original producer of "Ingles Sin Barreras." *Id.* Itkin subsequently assigned his interest in the agreement to American. *Id.* The 1990 agreement granted American the exclusive right to distribute the video course within the 312 and 708 area codes of Illinois. *Id.* The agreement required American to advertise individually. However, HAEM pledged to advertise nationally. The 1990 agreement set forth a schedule for apportioning sales generated by HAEM's national advertising within American's exclusive distribution area. *Id.* The agreement required American to purchase sales kits and a certain amount of video courses to activate its distribution rights. *Id.* To retain exclusive distribution rights, American was required to purchase additional video courses each month. *Id.* HAEM was obligated to ensure timely delivery of American's inventory needs. Sometime prior to May 1, 1994, HAEM's interest in the agreement was assigned to its successor, Hispaem of California, Inc. ("Hispaem"). *Id.* at Ex. B. According to American, Hispaem's rights in the agreement were eventually assigned to Lexicon. In the amended complaint,

2

American alleges Lexicon breached the 1990 agreement by selling video courses within American's exclusive distribution area in Illinois. *Id.* at 56.

In 1994, American entered into a second distribution agreement ("1994 agreement") with Hispaem. Am. Compl., Ex. B. The 1994 agreement granted American exclusive distribution rights in Arizona. *Id.* Like the 1990 agreement, the 1994 agreement required American to purchase a minimum number of video courses each month, as well as an initial purchase of sales kits and video courses. *Id.* The 1994 agreement included a forum selection clause, which required the parties to file suit in California to enforce the agreement. *Id.* According to American, Hispaem's interest in the 1994 agreement has been assigned to Lexicon. American alleges Lexicon breached the agreement by competing with American in Arizona.

In 1997, American and Hispaem executed a handwritten letter agreement ("1997 agreement") that modified the 1990 and 1994 agreements. Am. Compl. at ¶¶ 18-27. The 1997 agreement gave American distribution rights in Wisconsin and Indiana. *Id.* Like the previous agreements, the 1997 agreement required American to purchase video courses and sales kits, as well as maintain certain sales levels to retain distribution rights. *Id.* According to American, Hispaem's rights and obligations under this agreement were assigned to Lexicon. In the amended complaint, American alleges Lexicon breached the 1997 agreement in two ways: Lexicon improperly terminated the 1997 agreement on October 8, 2001; and, Lexicon sold video courses in Indiana and Wisconsin in violation of American's distribution rights.

In April 2002, Lexicon notified American that the cost of each video course would be increased from $253 to $380 as an exclusive distributor. At that time, Lexicon's justification for the increase was that "the company could no longer continue to absorb increases in product development

3

and manufacturing costs." *Id.* at ¶ 43. American later discovered that "other Lexicon franchisees and/or licensees" were paying less than $380 per video course. *Id.* at ¶ 46. Lexicon advised American that they considered "the actual costs to manufacture the product, product development expenses, and the conditions of the market" when setting the price of the video course. *Id.* at ¶ 49. Lexicon also explained that the price to "smaller distributors in Latin America and Mexico" might be less due to the "market conditions" in those countries, and that the price to "smaller US distributors" might be less due to the "growth mode" of those businesses. *Id.* The amended complaint alleges Lexicon engaged in price discrimination and made material misrepresentations to American about the price increase in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## DISCUSSION

### I. LEGAL STANDARD

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of American. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). In ruling, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). American's claims may be dismissed only if there are no sets of facts that would entitle it to relief based on the allegations in the amended complaint. *Conley*, 355 U.S. at 45-46. However, American can plead itself out of court by pleading facts that undermine the allegations set forth in the amended complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

4

## II. ILLINOIS FRANCHISE DISCLOSURE ACT

American claims Lexicon violated Section 5 of the IFDA by selling unregistered franchises under the 1990, 1994 and 1997 agreements and by failing to provide required disclosure documents. American further claims Lexicon violated Section 19 of the IFDA by terminating the 1997 franchise agreement. Lexicon moves to dismiss the IFDA claims (Count I) pursuant to Rule 12(b)(6).

### A. Statute of Limitations

The amended complaint alleges Lexicon (and/or its predecessors) violated the IFDA by selling American (and/or its predecessors) three franchises pursuant to the 1990, 1994, and 1997 agreements without complying with pre-sale registration and disclosure requirements. 815 ILCS 705/5. Lexicon asserts these claims are barred by the applicable statute of limitations.

Under the IFDA, "[n]o action shall be maintained . . . to enforce any liability created by this Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based." 815 ILCS 705/27. *See also Dudley Enterprises, Inc. v. Palmer Corp.*, 822 F.Supp. 496, 504 (N.D. Ill. 1993) (Section 27 barred claims arising from franchise agreement entered into more than three years prior). American's Section 5 claims are based on the franchise agreements entered into by the parties in 1990, 1994 and 1997. Undoubtedly then, the statute of limitations has run – in 1993, 1996 and 2000, respectively. American concedes as much. Instead, American advances new claims under the post-sale registration and disclosure requirements

5

of Section 10 and 11 of the IFDA. Pl. Opp. Mem. at 3-6.[1] However, American cannot use its response brief to amend the amended complaint. *Neal v. City of Chicago*, No. 03 C 1945, 2003 WL 22389309 at * 1 (N.D. Ill. Oct. 21, 2003).

Nor would these amendments save the day. Section 10 requires franchisors to file annual reports annually "but not later than one business day before the anniversary date of the *registration*." 815 ILCS 705/10. Section 11 requires *registered* franchisors to amend their disclosure statements and deliver the amended disclosure statement to any prospective franchisees within 90 days of certain material changes. 815 ILCS 705/11. Thus, Section 10 and 11 expressly apply only to franchisors who *registered* their franchises. Because American alleges Lexicon never registered the franchises in the first place, the requirements of Section 10 and 11 cannot come into play. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 654 (7th Cir. 2003) (leave to amend may be denied due to futility of amendment).

### B. Extraterritorial Application

The amended complaint alleges that Lexicon violated Section 19 of the IFDA by terminating the 1997 franchise agreement. Lexicon argues that American's termination of franchise claim is defective as a matter of law because it improperly seeks to apply the IFDA extraterritorially to video course sales in Wisconsin and Indiana. Lexicon's argument is persuasive.

---

[1] Specifically, American argues that "Section 705/10 of the IFDA requires that a franchisor file an annual disclosure statement with the Attorney General's office. The IFDA also requires that in the event that a material change occurs with respect to any fact required to be disclosed to a franchisee, the franchisor is obligated to amend its disclosure statement, file it with the Attorney General's office and deliver an amended disclosure statement to a prospective franchise. 815 ILCS 705/11." Pl. Opp. Mem. at 3.

This court has previously examined the extraterritorial application of the IFDA. *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, No. 99 C 5437, 2002 WL 31018302 (N.D. Ill. Sept. 9, 2002). In that case, plaintiff sued defendant when its franchise agreement was terminated. Plaintiff's territory under the franchise agreement included Illinois, Indiana, Iowa, Wisconsin and Michigan. Before trial, defendant moved to amend its pleadings to include an additional affirmative defense, "namely, that the IFDA cannot encompass damages incurred from lost sales activity outside of Illinois." *Id.* at * 3. The court refused extraterritorial application of the IFDA, relying on the fact that the statute was silent on the point and that extraterritorial application "would pose a constitutional issue." *Id.* at * 3-5. As a result, the court granted defendant's motion because it was undisputed that plaintiff sought recovery under the IFDA for out-of-state activities. *Id.* Contrary to American's position, *H.R.R. Zimmerman* bars recovery under the IFDA for the termination of a franchise agreement governing sales in Indiana and Wisconsin.

As Lexicon points out, American's attempt to distinguish *H.R.R. Zimmerman* is belied by the amended complaint. Am. Compl. at ¶ 20 ("[American] was granted the right to promote, market, sell and distribute INGLES SIN BARRERAS *in Wisconsin and Indiana*"); ¶ 22 ("On October 8, 2001, Lexicon terminated [American's] right[s] . . . *in Wisconsin and Indiana*"); ¶ 35 (same). American has not alleged that its termination claim "arises *solely* within Illinois." Pl. Opp. Mem. at 7. Instead, American merely alleges that it is an Illinois corporation with its principal place of business in Chicago. Id. at ¶ 3. American's response brief cannot serve to amend its IFDA claim. *Neal v. City of Chicago*, 2003 WL 22389309 at * 1. Nor is the proposed amendment of any consequence. It is irrelevant whether Indiana and Wisconsin consumers purchased the video courses by contacting American's telemarketers in Illinois. As in *H.R.R. Zimmerman*, this court will not

7

impose "[t]he public policy choices of the Illinois legislature . . . [on] the consumers of Indiana . . . and Wisconsin." *Id.* at * 4. The IFDA does not apply to sales to out-of-state consumers. In the absence of any contrary authority, American's franchise termination claim must be dismissed.[2]

## III. ILLINOIS CONSUMER FRAUD ACT

American claims that Lexicon violated the Illinois Consumer Fraud Act by engaging in price discrimination and making material misrepresentations to justify the video course price increase. In response, Lexicon argues that the ICFA claim must be dismissed on two bases: (1) American fails to sufficiently allege a material misrepresentation; and (2) price discrimination claims are not actionable under the ICFA. Lexicon is correct.

The amended complaint fails to plead Lexicon's alleged misrepresentations with particularity. American fails to identify with specificity how Lexicon's statements constitute misrepresentations. Indeed, American merely alleges that Lexicon stated that the video course price would be raised as to exclusive distributors, and that it subsequently learned that other distributors, namely smaller distributors in Mexico, Latin America, and the United States, were not paying the increased price. Significantly, American does not allege that these smaller distributors were exclusive distributors. Absent that allegation, American's misrepresentation claim under the ICFA cannot survive dismissal. *Miller v. Showcase Homes, Inc.*, No. 98 C 2009, 1999 WL 199605 at * 2 (N.D. Ill. 1999) (plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation

---

[2]American's untimely claim under the 1994 franchise agreement (*see supra* Part II.A.) similarly fails as an improper extraterritorial application of the IFDA. Under the 1994 franchise agreement, "[American] was granted . . . exclusive right[s] . . . *in Arizona.*" Am. Compl. at ¶ 14(a).

8

was communicated") (internal quotation marks and citations omitted). Contrary to American's argument, the materiality of Lexicon's purported statement is not yet at issue. Pl. Opp. Mem. at 10 ("[w]ith respect to materiality, there are genuine issues of material fact") (internal quotation marks and citations omitted). American must first allege a misrepresentation with particularity.

In addition, American attempts to avoid dismissal by arguing that it need not plead a misrepresentation in order to allege an ICFA claim. American misses the mark. In the amended complaint, American explicitly identified its claim as one of material misrepresentation. Am. Compl. at ¶ 50 ("Lexicon has engaged in unfair and deceptive acts or practices in violation of the Consumer Fraud Act by . . . *Misrepresenting* to [American] that increase in price for the purchase of Video Courses to $380 was as a result of [American] being an 'exclusive distributor' and Lexicon's inability to 'absorb increases in product development and manufacturing costs'") (emphasis added). Having voluntarily done so, American cannot now avoid the requirements of Rule 9(b). *De Leon v. Beneficial Const. Co.*, 55 F.Supp.2d 819, 825 (N.D. Ill. 1999) (misrepresentation claims under the Illinois Consumer Fraud Act must comply with Federal Rule of Civil Procedure 9(b)). Accordingly, Count II is dismissed without prejudice to the extent it alleges a claim for material misrepresentation under ICFA.

American's price discrimination claim also fails. As Lexicon correctly pointed out, price discrimination is not actionable under the ICFA. *Laughlin, et al. v. Evanston Hosp., et al.*, 550 N.E.2d 986, 993 (Ill. 1990). Contrary to American's position, the Illinois Supreme Court's holding was not limited to those cases in which plaintiff attempts to disguise an antitrust claim:

> As discussed above, the legislature in the Antitrust Act declined to include provisions against price discrimination because the legislature found that inclusion of such prohibitions would be undesirable. To construe the Consumer Fraud Act to give a

9

> cause of action for discriminatory pricing that the legislature refused to give under
> the Antitrust Act would be incongruous. Legislation is designed to be consistent. It
> would be inconsistent to provide that the very conduct which is not sufficient to state
> a cause of action under the Antitrust Act is sufficient to state a cause of action under
> the Consumer Fraud Act.

*Id.* Nor is this court persuaded by American's single citation to the non-binding, vacated decision of *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, 913 F.Supp. 1088, 1139 (N.D. Ill. 1995) (vacated pursuant to settlement). *Laughlin* undisputedly bars this claim. *Compare Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 444 n.10 (1983) ("Economic price discrimination consists in selling a product to different customers at prices that bear different ratios to the marginal costs of sales to those customers") *with* Am. Compl. at ¶ 50(a) ("Lexicon has engaged in unfair and deceptive acts or practices in violation of the Consumer Fraud Act by... engaging in economic price discrimination by selling the Video Courses to different franchisees and/or licensees at prices that bear different ratios to the marginal costs of sales to [American]"). Count II is dismissed with prejudice to the extent it alleges a claim for economic price discrimination under the ICFA.

## IV. BREACH OF CONTRACT

Count III of the amended complaint alleges that Lexicon breached the 1990, 1994 and 1997 franchise agreements by making unauthorized sales in American's distribution territories. The amended complaint further alleges that Lexicon breached the 1997 agreement by improperly terminating American's distribution rights in Indiana and Wisconsin on October 8, 2001.

### A. Venue

Lexicon moves to dismiss American's contract claim for improper venue to the extent it alleges a breach of the 1994 agreement because that agreement contains a forum selection clause.

Lexicon further moves for dismissal of American's breach of contract claims under the 1990 and 1997 agreements, arguing that the claims are necessarily interrelated.

Under the 1994 agreement, "[t]he parties agree[d] to bring any actions involving the interpretation or enforcement of th[e] agreement in a court having jurisdiction in California, with a venue in Los Angeles County, California." Am. Compl., Ex. B at ¶ 16. Pursuant to Fed. R. Civ. P. 12(b)(3), courts generally enforce a forum selection clause and dismiss an action when a contract dispute arises over an agreement containing a forum selection clause with sufficiently mandatory language. *See Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 WL 22284207 (N.D. Ill. Oct. 3, 2003). However, Illinois law contains an exception. The Illinois Franchise Disclosure Act voids forum selection clauses in franchise agreements covered by the Act. 815 ILCS 705/4 ("Any provision in a franchise agreement that designates jurisdiction or venue outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State"). As explained above, the IFDA cannot apply because the 1994 agreement only governs out-of-state sales in Arizona. *See supra* Part II, B at n. 2. Accordingly, the IFDA cannot invalidate the forum selection clause in the 1994 agreement. Contrary to American's position, this court's prior decision in *American Top English, Inc.*, 2004 WL 407031, at *1 does not foreclose this result. During briefing, the parties did not individually address the 1990, 1994, and 1997 agreements with respect to the anti-forum selection provision of the IFDA. Instead, the parties' briefs casually lumped the agreements together. American's breach of contract claim must be dismissed pursuant to Rule 12(b)(3) to the extent it alleges a breach of the 1994 agreement.

Lexicon also argues American's breach of contract claims arising under the 1990 and 1997 agreements should be dismissed because the agreements are interrelated. Lexicon's argument is

11

fatally flawed. Unlike the 1994 agreement, the 1990 and 1997 agreements do not contain forum selection clauses. Nor can the forum selection clause of the 1994 agreement be read into either agreement. The plain language provides otherwise. *See* Am. Compl., Ex. B (1994 agreement expressly states that "none of [its] terms and provisions . . . shall amend, supplement, or superseded in any way any of the terms of the [1990 agreement]"); *Id.*, Ex. C (1997 agreement explicitly states that the 1990 and 1994 agreements "remain in full force and effect, subject to modification by the terms of this Letter Agreement only" and "[t]o the extent the terms of this Letter Agreement conflict with the terms of the [1990 and 1994 agreements], the terms of this Letter Agreement shall be controlling"). Lexicon's Rule 12(b)(3) motion to dismiss American's claims regarding the breaches of the 1990 and 1997 agreements must be denied. This court's dismissal of American's breach of contract claim regarding the 1994 agreement does not change this result. *See CQL Original Products, Inc. v. Nat'l Hockey League Players' Ass'n*, 39 Cal. App. 4th 1347, 1354 (1995) (inconvenience and additional expense are not relevant to the determination of whether to enforce a forum selection clause).

### B.     Breach of Contract: 1990 and 1994 Agreements

Lexicon argues that American's breach of contract claims under the 1990 and 1994 agreements are limited by subsequent agreement of the parties.[3] This court need not consider

---

[3]Lexicon's motion only seeks to limit recovery under the 1990 and 1994 agreements. Def. Mem. at 14 ("any claim based on Lexicon's sales in [American's] territories under the 1990 and 1994 Distributor Agreements should be limited to such sales that occurred ninety days prior to [American's] filing its First Amended Complaint"). In response, American focuses on Lexicon's offending sales in Wisconsin and Indiana, sales necessarily governed by the 1997 agreement. Pl. Opp. Mem. at 14. This court only considers the basis for Lexicon's motion, *i.e.*, the limitation as applied to the 1990 and 1994 agreements.

Lexicon's argument as it pertains to the 1994 agreement. American's breach of contract claim is dismissed to the extent it alleges breach of the 1994 agreement. *See supra* Part IV.A. In any event, Lexicon's argument fails under Rule 12(b)(6).

Lexicon argues the parties entered into an agreement on July 25, 1997 that modified the 1990 and 1994 agreements. Specifically, Lexicon claims that American may not seek to recover for any sale unauthorized by the 1990 and 1994 agreements more than 90 days after the sale. In so arguing, Lexicon attaches an additional agreement between the parties to its motion to dismiss. Def. Mem., Ex. 3 at ¶ 11 ("[i]n no event shall [American] seek compensation from [Lexicon] for unauthorized sales more than 90 days after any such sale by [Lexicon]"). On a Rule 12(b)(6) motion, documents attached by Lexicon may only be considered part of the pleadings when they are (1) referred to in American's amended complaint; and (2) are central to American's claims. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). American's amended complaint does not refer to the July 25, 1997 typed agreement that Lexicon attaches to its motion. American alleges breaches of the 1990, 1994, and July 26, 1997 agreements without reference to the existence of, or limitations included in, the July 25, 1997 agreement. Thus, the agreement is not central to American's claim. The July 25, 1997 agreement is central to Lexicon's defense of American's claims and may not be considered under Rule 12(b)(6). *Id.* Nor will Lexicon's motion be converted into one for summary judgment. *Batteast Construction Co. v. Public Building Commission of Chicago*, 195 F.Supp.2d 1045, 1051 (N.D. Ill. 2001). Accordingly, the motion to dismiss American's breach of contract claims to the extent recovery is sought for sales unauthorized by the 1990 and 1994 agreements and made ninety days prior to American's filing of its amended complaint is denied.

13

C.  **Breach of Contract: 1997 Agreement**[4]

Lexicon claims that American's breach of contract claim regarding the 1997 agreement must be dismissed because the agreement did not provide American with exclusive distribution rights in Wisconsin and Indiana. In response, American argues that the question of exclusivity is a question of fact that may not be resolved by Lexicon's Rule 12(b)(6) motion.

Lexicon points out that the amended complaint does not explicitly allege that the 1997 agreement, like the 1990 and 1994 agreements, granted American exclusive distribution rights. *Compare* Am. Compl. ¶¶ 20, 62, 64 ("[u]nder the terms of the 1997 Agreement, inter alia, [American] was granted the right to promote, market, sell and distribute in Wisconsin and Indiana") *with* ¶ 8(b) ("[u]nder the terms of the 1990 Agreement, . . . [American] was the exclusive Distributor within . . . Illinois"); ¶ 14(a) ("[u]nder the terms of the 1994 Agreement, . . . [American] was granted the exclusive right to promote, market, sell and distribute . . . in Arizona"). In the absence of an allegation as to the exclusivity of distributorships in Wisconsin and Indiana, American's breach of contract claim cannot survive dismissal. American effectively concedes this point and argues, *inter alia*, that the exclusivity of its distributorships in Wisconsin and Indiana may arise out of another agreement between the parties. Pl. Opp. Mem. at 13. In this regard, the court notes that the 1997 agreement itself refers to another agreement governing American's distribution rights in Wisconsin and Indiana. Am. Compl., Ex. C ("the following is hereby *added* to the Distribution Agreement for the states of Illinois, Wisconsin and Indiana"); ("[i]t is expressly understood by the parties hereto that

---

[4]Lexicon's motion to dismiss challenges American's breach of contract claim regarding the 1997 agreement with reference to a November 1, 2001 letter of intent between the parties. As with the July 25, 1997 agreement, the amended complaint contains no reference to this letter. Accordingly, it will not be considered. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). *See also supra* Part IV.B.

14

the Distributor Agreements remain in full force and effect") (emphasis added). Accordingly, the dismissal of American's breach of contract claim regarding the 1997 agreement is without prejudice.

June 18, 2004                                    ENTER:

                                                 /s/ Suzanne B. Conlon
                                                 Suzanne B. Conlon
                                                 United States District Judge