# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7021 | **DATE** | 10/1/2004 |
| **CASE TITLE** | AMERICAN TOP ENGLISH vs. LEXICON MARKETING (USA), INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The cross-motions for summary judgment [67-1, 70-1] are denied. Defendant's motion to strike plaintiff's affirmative defenses [65-1] is granted in part and denied in part. ENTER MEMORANDUM OPINION AND ORDER. The parties shall present their joint final pretrial order and agreed jury instructions on November 12, 2004 at 9:00 a.m.; plaintiff shall provide its draft pretrial order to defendant by November 1, 2004. The case is set for trial on December 6, 2004 at 9:00 a.m.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

OCT 0 4 2004
date docketed

JXM
docketing deputy initials

10/1/2004
date mailed notice

**Document Number**

**105**

| | |
|---|---|
| CB | courtroom deputy's initials |

U.S. DISTRICT COURT

2004 OCT -1 PM 4:50

PW
mailing deputy initials

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

OCT 0 4 2004

AMERICAN TOP ENGLISH, )
)
Plaintiff, )            No.  03 c 7021
)
v. )            Suzanne B. Conlon, Judge
)
LEXICON MARKETING (USA), INC.. )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

American Top English ("American") sues Lexicon Marketing (USA), Inc. ("Lexicon") for

breaching the parties' contract by selling video courses in the State of Illinois.  Lexicon

counterclaims American breached the parties' contract by failing to pay invoices.  Lexicon moves

for summary judgment on its counterclaim and American's breach of contract claim under Fed. R.

Civ. P. 56.  Lexicon also moves to strike American's affirmative defenses under Fed. R. Civ. P.

12(f).  American moves for summary judgment on Lexicon's counterclaim under Fed. R. Civ. P. 56.

## BACKGROUND

### A.     The 1990 Agreement

All facts are undisputed unless otherwise noted.[1]  Lexicon produces, markets and sells *Ingles*

*Sin Barreras,* a twelve-volume instructional video course that teaches English to native Spanish

speakers.  Lexicon Facts ¶ 3.  Lexicon contends it markets and sells numerous products under the

brand name *Ingles Sin Barreras,* including *Ingles Sin Barreras Compacto,* a six-volume product, and

---

[1]Lexicon filed a reply to American's response to Lexicon's statement of undisputed
material facts.  This response is not authorized by Local Rule 56.1 and is disregarded.



*Ingles Sin Barreras* for Institutions. *Id.* at ¶¶ 4-7. American contends Lexicon markets and sells only one product under the brand name *Ingles Sin Barreras,* but through different versions. American Resp. to Lexicon Facts at ¶¶ 4, 6. American asserts these versions have identical content but different tools. *Id.* at ¶ 7.

On May 2, 1990, American entered into a distribution agreement ("the 1990 agreement") with one of Lexicon's predecessors, Hispanic-American Educational Materials, Inc. ("HAEM"). *Id.* at ¶ 14. The parties contest whether the 1990 agreement limits American's distribution rights to one specific product. Lexicon contends American has rights to distribute and market "an English Language Course consisting of twelve (12) videocassette volumes and accompanying material to be used in the instruction of the English language to the Hispanic market," which means only the *Ingles Sin Barreras* complete product. *Id.* at ¶¶ 16-17. American contends the 1990 agreement does not limit distribution rights to the complete product and that it is entitled to sell all products under the *Ingles Sin Barreras* brand name. American Resp. to Lexicon Facts at ¶ 16. Either way, the 1990 agreement grants American sole and exclusive rights to distribute the product in the State of Illinois and in specific territories: (a) area codes 312 and 708, on an exclusive basis; and (b) the remainder of Illinois, on an exclusive basis, provided and so long as American purchased at least 75 video courses per month from Lexicon for Illinois' sales. Lexicon Facts at ¶¶ 18-19.

Section 15 of the 1990 agreement provides:

> If either party is in default under this Agreement and the default continues for not less than twenty (20) days after receipt of certified written notice from the non-defaulting party, the non-defaulting party shall have the full right, power and authority to terminate this Agreement, or any portions or paragraphs of this Agreement as the non-defaulting party may elect.

2

Lexicon Facts at ¶ 27. The 1990 agreement also states "in any arbitration or litigation relating to this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees." Lexicon Add'l Facts at ¶ 29. "Any waiver by either party of any breach of any kind . . . shall not be construed as a continuing waiver, or consent to, any subsequent breach . . ." *Id.* at ¶ 30. The 1990 agreement contains an integration provision that the agreement constitutes the entire agreement between the parties and could be modified or amended "only by a writing signed by the parties and making specific reference that this Agreement is intended to be modified thereby." Lexicon Facts at ¶ 28.

The parties completed an addendum to the 1990 agreement. *Id.* at ¶ 15. The addendum grants American rights to purchase sales leads generated by Lexicon's national advertising. *Id.* at ¶ 29. Section 11 of the addendum provides:

> [Lexicon] will not advertise in the specified exclusive area of [American]. Sales leads generated by [Lexicon's] national advertising which spills over into [American's] territory, will be received by [Lexicon] and retransmitted to [American] at [Lexicon's] cost of advertising and toll calls as follows: using AT&T's Executive Summary for [Lexicon's] 800 telephone line, [American] will be charged that percentage of the bill that corresponds to [its] area's percentage of calls. [American] understands that said Executive Summary does not include calls from the State of California, which will not be figured into the above computation. This same percentage will then be applied to [Lexicon's] advertising bill that applies to [American].

American Add'l Facts at ¶ 115. On a monthly basis, Lexicon sends invoices to American reflecting the number of leads Lexicon provided to American for the previous month and the cost of those leads. *Id.* at ¶ 116. American's bill for the sales leads is determined by a formula prescribed by the addendum. Lexicon Facts at ¶ 30. The addendum requires American to notify Lexicon in writing if American does not wish to purchase the forwarded leads; American has never refused any of the

offered sales leads. Lexicon Facts at ¶¶ 31-32. The addendum further provides "[i]f [American] purchases seventy-five (75) Video Courses per month , [American] will have the Exclusive Distributorship for the entire State of Illinois." American Facts at ¶ 11. Neither the 1990 agreement nor the addendum expressly state "time is of the essence." *Id.* at ¶ 15. The 1990 agreement is to be construed in accordance with the laws of the State of California. *Id.* ¶ 9; Lexicon Facts at ¶ 33.

### B. The 1997 Agreement

On June 25, 1997, Lexicon and American entered into an agreement:

> In consideration for the promises made in this Agreement and for other good and valuable consideration, [American] hereby releases, remises, and forever discharges [Lexicon] from any and all claims, actions, causes of action, and/or rights of set-off arising out of performance or non-performance of the Distribution Agreements between the dates of May 2, 1990 through January 1, 1997.

Lexicon Facts at ¶ 38. In addition, the parties amended the 1990 agreement to include the following ninety-day contractual period of limitation:

> The Distribution Agreements and each of them are amended in the following respects only to add the following: In the event that [American] learns of an unauthorized sale of [Lexicon] product in the sales territories of [American], [American] shall notify [Lexicon] in writing within two weeks of the finding. In such event and upon confirmation of the unauthorized sale, [Lexicon] shall pay the salesperson's commission for each such sale to [American]. In no event shall [American] seek compensation from [Lexicon] for unauthorized sales more than ninety [90] days after any such sale by [Lexicon].

*Id.* at ¶ 40. The 1997 Agreement is to be construed in accordance with the laws of the State of California. *Id.* at ¶ 41.

### C. American's Payments for Sales Leads and Telephonic Services

In October 2003, the parties disputed the accuracy of advertising amounts reflected on Lexicon's invoices. American Add'l Facts at ¶ 125. American contends since 1990, Lexicon's sales

leads and telephonic services invoices have enclosed various information including, beginning in 2001, data regarding the number of calls received per area code in all territories. *Id.* at ¶ 121. American contends it relied on this back-up data to verify the accuracy of Lexicon's invoices. *Id.* at ¶ 124; American Facts at ¶¶ 19-20. In October 2003, however, Lexicon stopped including the back-up data with the invoices. American Facts at ¶¶ 21-22. American asserts it could not verify the invoices' accuracy without knowing what states were included in the total number of sales leads. American Add'l Facts at ¶ 127. Lexicon contends the back-up information was provided as a courtesy and was unnecessary to verify the invoices' accuracy. *Id.*; Lexicon Facts at ¶ 97. Further, Lexicon contends there was no contractual obligation to provide American with the confidential and proprietary information. *Id.* at ¶ 26; ¶¶ 94-95.

On October 13, 2003, Lexicon sent American a written demand for payment of $632,658.71 in outstanding invoices for sales leads. Lexicon Facts at ¶ 105. The October 13th letter stated: (1) on September 25th, American had been notified of its defaults; (2) the period to cure expired twenty days later on October 15th; and (3) Lexicon was entitled to terminate American's distribution agreement after the cure period expired. *Id.* at ¶ 106. The next day, American sent Lexicon a check for $632,658.11, sixty cents less the amount due, but stated it was paying the amount "under protest." Lexicon Facts at ¶ 107.

The dispute over back-up data did not end in October 2003. In December 2003, and between January and March 2004, American and Lexicon exchanged e-mails relating to the production of back-up data. American Facts at ¶¶ 23-25, 27. American contends Lexicon agreed in a December 12, 2003 e-mail to provide the requested data before requiring payment, a representation upon which

American relied. *Id.*; American Add'l Facts at ¶ 129. Lexicon disputes it agreed to provide the data. Lexicon Resp. to American Add'l Facts at ¶ 129.

In the meantime, Lexicon invoiced American for sales leads as follows: (1) $55,939.45 on December 28, 2003 (January 15, 2004 due date); (2) $50,495.15 on January 20, 2004 (February 15, 2004 due date); (3) $32,788.70 on February 13, 2004 (March 15, 2004 due date); (4) $32,483.50 on March 18, 2004 (April 15, 2004 due date); (5) $59,083.09 on April 15, 2004 (May 15, 2004 due date); and (6) $53,914.03 on May 13, 2004 (June 15, 2004 due date). *Id.* at ¶¶ 68-73. Lexicon contends $7,679.70 remains unpaid on the February invoice, $46,152.27 remains unpaid on the March invoice, $37,201.10 remains unpaid on the April invoice, and $31,286.14 remains unpaid on the May invoice. *Id.* at ¶¶ 70-73. Lexicon contends all other invoices remain unpaid in full. *Id.* at ¶¶ 68-69. Further, Lexicon contends American owes $21,000.00 in unpaid invoices for telephonic services. *Id.* at ¶¶ 80-91.

On March 17, 2004, Lexicon notified American by letter that it would be in default of the 1990 agreement if all outstanding invoices were not paid within twenty days. Lexicon Facts at ¶ 92. The letter also stated "while it may be true that you were receiving the full reports until October 2003, a review of our internal accounting practices indicated that the information being disclosed to you is proprietary confidential company data. As a result, Lexicon will no longer disclose the information you were previously receiving in the reports." American Add'l Facts at ¶ 133. American tendered a $25,000.00 payment to Lexicon on March 5, 2004; the memo portion of the check stated "[g]ood faith payment for January 2004 advertising." American Facts at ¶ 28. American also tendered a $50,000.00 payment to Lexicon. *Id.* at ¶ 29. Lexicon accepted and applied these payments to American's account. Lexicon Resp. to American Facts at ¶¶ 28-29. On March

6

31, 2004, American responded to Lexicon's March 17th letter, requested explanation for Lexicon's position that back-up data was unnecessary to verify the invoices, and responded that: (1) it had not refused to remit amounts owed and had paid $75,000.00; (2) it was not in default; (3) it needed back-up information; and (4) intended to pay appropriate bills. American Facts, Ex. V.

On April 2, 2004, Lexicon sent another letter to American indicating: (1) American's account was delinquent; (2) American was in default of the 1990 agreement; and (3) Lexicon reserved each of its rights and remedies for the default. Lexicon Facts at ¶¶ 98-99. By letters dated April 12, 2004 and May 4, 2004, American again requested explanation for Lexicon's position that back-up data was unnecessary to verify the invoices. American Facts at ¶ 22. American asserts Lexicon never responded to these requests. *Id.* at ¶ 33. Lexicon contends it responded American was not contractually entitled to the information, the information was confidential and proprietary, and Lexicon would not provide the information to American. Lexicon Resp. to American Facts at ¶ 34. On May 4, 2004, American informed Lexicon it had decided to place the amounts alleged to be owed in escrow until the invoices were verified, at which point the sum in escrow would be delivered to Lexicon. American Facts at ¶ 38, Ex. X. On June 16, 2004, both parties acknowledged that errors did exist in the invoices' totals. American Facts at ¶¶ 137-138; Lexicon Resp. to American Facts at ¶¶ 137-138. Nonetheless, on June 30, 2004, Lexicon sent American written notice it was terminating the 1990 agreement and that such termination would take effect on the earliest date this court deems proper. Lexicon Facts at ¶ 102.

American contends all invoices have been paid in full. American Resp. to Lexicon Facts at ¶¶ 67-73, 80-91. American asserts it delivered full payment to Lexicon of all invoices claimed to be due and owing on August 9, 2004. American Facts at ¶ 43, 45. Lexicon responds it received two

7

overnight mail pouches, six checks and six letters from American on August 10, 2004, but American did not tender payment for any amount of interest on the overdue invoices, nor did it pay any amount for the costs and reasonable attorneys' fees Lexicon incurred to litigate its counterclaims. Lexicon Resp. to American Facts at ¶ 45. Lexicon contends its expert has opined that through July 23, 2004, the amount of interest due on the disputed sales leads invoices was $13,286.40 and on disputed telephonic services invoices, $1,281.66. *Id.* Lexicon therefore contends American has not paid monthly invoices since January 2004 and owes more than $250,000.00 for sales leads and $21,000.00 for telephonic services. Lexicon Facts at ¶¶ 67, 80.

### E. Unauthorized Sales by Lexicon in Illinois

Lexicon asserts it has made the following video course sales in Illinois: (1) between 1990 and 1997, fewer than 30 sales; (2) from 1997-2002, fewer than 100 sales; (3) 2002-present, no sales of the complete version of *Ingles Sin Barreras* that have not already been transferred to American or credited to American's account; (4) since January 1, 2002, less than 50 sales of *Ingles Sin Barreras* Institutional; and (5) since January 16, 2004, it has sold only *Ingles Sin Barreras* Institutional. Lexicon Facts at ¶¶ 59-64. American disputes these numbers and contends it had exclusive rights to sell all versions of the video course, including *Ingles Sin Barreras* Institutional. American Resp. to Lexicon Facts at ¶¶ 59-64. It is uncontested American complained of unauthorized sales two to three times per year over the parties' fourteen-year relationship, and that it possessed some knowledge and notice of unauthorized sales in its territory. Lexicon Facts at ¶ 65. Further, it is uncontested American did not seek compensation in writing from Lexicon for alleged unauthorized sales until April 16, 2004, the date American filed its first amended complaint. *Id.* at ¶ 66.

# DISCUSSION

## I. Motions for Summary Judgment

On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56. *EEOC v. Admiral Maint. Serv., L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Lexicon's Motion on American's Remaining Claim

Lexicon moves for summary judgment on American's claim that Lexicon is liable for unauthorized sales of the video course in Illinois. Lexicon argues any unauthorized sales that occurred more than ninety days prior to American's April 16, 2004 lawsuit are barred by the 1997 Agreement, which provides "*in no event* shall [American] seek compensation from [Lexicon] for unauthorized sales more than ninety [90] days after any such sale by [Lexicon]" (emphasis added). Lexicon further contends the only sales it made in Illinois after January 16, 2004, were of the institutional version of the video course which American does not have exclusive rights to sell.

9

Lexicon argues American only has rights to distribute and market "an English Language Course consisting of twelve (12) videocassette volumes and accompanying material to be used in the instruction of the English language to the Hispanic market." Finally, Lexicon argues American has not produced any competent evidence of its lost profits and cannot establish damages from any unauthorized sales.

In response, American argues the 90-day contractual limitations period is unreasonable and unlawful because California law allows contracting parties to shorten California's four-year statute of limitations only if the shortened period is reasonable. Further, because the 1997 agreement states "[i]n the event [American] learns of an unauthorized sale . . .," American relies on a "discovery rule" that limits the application of a statute of limitations "where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware they have been injured." *Armando v. Moreno*, 106 Cal. App. 4th 1415, 1423 (Cal. Ct. App. 2003) ("a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action . . . when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence"). *Id.* Thus, American contends the issue of American's knowledge of Lexicon's unauthorized sales and the facts of those sales are questions of facts for a jury. American contends no agreement between the parties distinguishes between the institutional version of the courses and any other version. In any event, whether the materials Lexicon sold are substantially different from what American sells, or whether American is precluded from selling the institutional version, are material issues of fact precluding summary judgment. Finally, American argues uncertainty regarding the amount of damages to be recovered is not a basis of summary judgment.

The 1997 agreement provides:

> The Distribution Agreements and each of them are amended in the following respects
> only to add the following: In the event that [American] learns of an unauthorized sale
> of [Lexicon] product in the sales territories of [American], [American] shall notify
> [Lexicon] in writing within two weeks of the finding. In such event and upon
> confirmation of the unauthorized sale, [Lexicon] shall pay the salesperson's
> commission for each such sale to [American]. In no event shall [American] seek
> compensation from [Lexicon] for unauthorized sales more than ninety [90] days after
> any such sale by [Lexicon].

On April 16, 2004, American filed its first amended complaint seeking compensation from Lexicon

for alleged unauthorized sales. California's four-year statute of limitations period for breach of

contract clearly bars recovery for any unauthorized sales made before April 16, 2000. Cal. Code Civ.

P. § 337 (1); *Mortkowitz v. Texaco Inc.*, 842 F. Supp. 1232, 1236-37 (N.D. Cal. 1994). Therefore,

the only alleged unauthorized sales at issue are those occurring after April 16, 2000.

American's reliance on *Armando v. Moreno*, 106 Cal. App. 4th 1415, 1423 (Cal. Ct. App.

2003), is misplaced. Generally, a plaintiff seeking to enforce the discovery rule, an exception

typically applied in tort cases, must plead specific facts establishing: (1) the time and manner of

discovery; and (2) an inability to have made earlier discovery despite reasonable diligence.

*Mortkowitz*, 842 F. Supp. at 1238. *Armando* also reinforces the general rule that a cause of action

accrues when the wrongful act occurs, not when plaintiff discovers the act. *Id.* at 1423. Although

*Armando* lists several situations when the discovery rule may apply as an exception to the general

rule, it further holds the exception is appropriate when the parties have a relationship of special trust,

such as a fiduciary, confidential or privileged relationship. *Id.* at 1423-24. *Armando* applies the

discovery rule to a home inspection contract for public policy reasons; the only other breach of

contract situation mentioned in *Armando* is a contract breach committed in secret. *Id.*

11

The discovery rule exception in not appropriate here. American has not pleaded specific facts regarding the time and manner of discovery or an inability to have made earlier discovery. Nor does American provide evidence establishing the parties have a relationship of special trust or that Lexicon's alleged breaches occurred in secret. Indeed, it is uncontested American complained of unauthorized sales two to three times per year over the parties' fourteen-year relationship, indicating it possessed some knowledge and notice of unauthorized sales in its territory. American also filed its original complaint on October 3, 2003 alleging a claim for breach of American's distribution rights. However, American admits it did not seek compensation in writing from Lexicon for alleged unauthorized sales until April 16, 2004. Therefore, even if American did not discover the alleged breaches until as late as October 3, 2003, it did not seek compensation from Lexicon within two weeks, let alone 90 days, of discovery pursuant to the parties' agreement. Further, the court disagrees with American's assertion that the language "[i]n the event [American] learns of an unauthorized sale . . .," means the discovery rule applies instead of the 90-day contractual limitation period. The express contract language states "*in no event* shall [American] seek compensation from [Lexicon] for unauthorized sales more than ninety [90] days after any such sale by [Lexicon]." The 90-day limitations period is applicable. American cannot recover for unauthorized sales that occurred more than 90 days prior to April 16, 2004.

Unauthorized sales that occurred between January 16, 2004 and April 16, 2004 remain. The evidence demonstrates the only sales Lexicon made in Illinois after January 16, 2004 were of the institutional version of the video course. Assuming the contract provides American with exclusive rights to sell the institutional version of the video course in Illinois, a fact that is highly contested, an unauthorized sale by Lexicon is not a *per se* breach of contract. The contract contemplates

12

American will notify Lexicon in writing within two weeks of learning about an unauthorized sale and, upon confirmation of the unauthorized sale, Lexicon will pay American the commission from the sale. American's window of recovery is therefore narrowed yet again, as the contract requires written notice within two weeks of the finding. American cannot recover for unauthorized sales that it learned of more than two weeks prior to April 16, 2004.

Material issues of facts exist as to whether the contract provides American with exclusive rights to sell the institutional version of the video course, so that Lexicon's sale of the institutional version in Illinois breached the contract. If the contract provides American exclusive rights to sell the institutional version in Illinois, there are questions of fact regarding the sales that occurred within two weeks of American's April 16, 2004 written notice and the damages incurred as a result of the unauthorized sales. Summary judgment must be denied.

## B.    Cross-Motions on Lexicon's Counterclaim

Both parties move for summary judgment on Lexicon's counterclaim. Lexicon's counterclaim seeks a judgment: (A) declaring (i) Lexicon is entitled to terminate the parties' distribution agreements and (ii) such agreements are terminated effective the earliest date the court deems proper; (B) awarding damages to Lexicon for American's breach; and (C) awarding prevailing party attorneys' fees and costs.

Lexicon contends it is entitled to a judgment declaring it is contractually entitled to terminate the parties' non-Arizona distribution agreements. Lexicon argues it is undisputed that American failed and refused to pay approximately $250,000.00 in outstanding and overdue invoices, notwithstanding Lexicon's written notices demanding payment. Because American failed to cure its defaults within 20 days of receiving Lexicon's notices, Lexicon contends it is entitled to terminate

13

the distribution agreement pursuant to § 15 of the parties' 1990 agreement. Lexicon further contends it is entitled to summary judgment on its counterclaim for damages, since American failed to meet its contractual obligations to pay for services Lexicon provided. Accordingly, Lexicon contends it is entitled to an award of $264,431.87, plus interest accruing subsequent to July 23, 2004 and prior to the date of payment. Finally, Lexicon asserts it is entitled to costs and reasonable attorneys' fees under the 1990 agreement, should it prevail on its claims. Because the amounts are not currently known and must be the subject of post-judgment proceedings, Lexicon does not seek summary judgment on that portion of its declaratory judgment and breach of contract claims.

American contends Lexicon is not entitled to terminate the contract and American is entitled to summary judgment on Lexicon's counterclaim. Citing California Civil Code § 3275, American argues it was clearly not in breach, let alone material breach, of the 1990 agreement. American contends neither the 1990 agreement or addendum state that time is of the essence or specify when payment from American is due. Further, American argues it regularly communicated with Lexicon regarding Lexicon's failure to provide back-up data, it tendered two good faith payments in the amount of $75,000, and it put the remainder of the amount due in escrow. American contends Lexicon accepted the $75,000 tendered in good faith. American argues Lexicon's failure to provide the back-up data necessary to verify the accuracy of Lexicon's invoices, and American's reliance on Lexicon's representation the data would be provided, justified the delay in payment. Further, American argues Lexicon's claims for declaratory relief and breach of contract are moot because on August 9, 2004, it tendered full payment to Lexicon of all invoices claimed to be due and owing. Finally, American contends Lexicon's claim for attorneys' fees and costs is premature because

Lexicon has not prevailed on its counterclaims or the claims asserted by American, and because the suit must be oppressive to justify an award of attorneys' fees and costs.

The court reviews the parties' cross-summary judgment motions drawing all facts and inferences in favor of the non-movant. Neither party is entitled to summary judgment on defendant's counterclaim. The record contains several material issues of fact regarding whether American breached the contract. For instance, the parties vigorously dispute a key fact: whether payment in full has been rendered. Further, there are material questions of fact regarding whether American was in breach when it tendered two good faith payments in the amount of $75,000, communicated with Lexicon regarding Lexicon's failure to provide back-up data, and tendered payment for the amount owed and due on August 9, 2004. Even if American were not contractually entitled to all back-up data sought, which is disputed, whether delayed payments of Lexicon's invoices constituted a breach of the parties' contract is a question of fact given the parties dispute regarding the contract's silence on payment requirements.

In addition, even if the contract were breached, California courts only allow termination of a contract if the breach is material, substantial or total. *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (Cal. Ct. App. 1987). "Whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact." *Id., citing Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 601 (Cal. Ct. App. 1969). Lexicon argues delayed payment is clearly a material breach justifying termination of the contract and that materiality is irrelevant anyway because § 15 only requires a default, thereby dispensing of the common-law materiality requirement. Lexicon provides no law governing the

contract to support this assertion. Summary judgment is inappropriate. Both parties' motions for summary judgment on defendant's counterclaim are denied.

## II.    Motion to Strike Affirmative Defenses

A court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).   As a rule, motions to strike are disfavored because they may serve only to cause delay. *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 801 (N.D. Ill. 2000). However, where motions to strike "remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses are pleadings, and thus must set forth a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "An allegation must include either direct or inferential allegations respecting all material elements of the claim asserted." *Man Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999). Affirmative defenses that are simply "bare bones conclusory allegations" do not meet this standard and must be stricken. *Heller*, 883 F.2d at 1295.  In evaluating whether an affirmative defense should be stricken, the court must determine: "(1) whether the matter is appropriately pleaded as an affirmative defense; (2) whether it is adequately pleaded; and (3) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard." *Gen. Elec. Capital Corp. v. Munson Marine, Inc.*, No. 91 C 5090, 1992 U.S. Dist. LEXIS 877, *2 (N.D. Ill. Jan. 27, 1992).  On the third prong, if the defendant could prove no set of facts in support of the affirmative defense that would defeat the complaint, the defense must be stricken as legally inadequate. *Surface Shields, Inc. v. Poly-Tak Prot. Sys.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003).

## A.    First Affirmative Defense

American's first affirmative defense states "the counterclaim fails to state a cause of action."

A defense for failure to state a claim merely rephrases the standard for evaluating a motion to dismiss

under Fed. R. Civ. P. 12(b)(6). "This type of allegation is not an affirmative defense which adds

substance to the litigation; it is clutter." *Surface Shields*, 213 F.R.D. at 308; *see also Imperial*

*Constr. Mgmt. Corp. v. Laborers' Int'l Union*, 818 F. Supp. 1179 (N.D. Ill. 1993). American argues

the affirmative defense should not be stricken because courts may grant summary judgment for

failure to state a claim. But where the affirmative defense is merely listed without a short statement

to explain the basis for the defense, it is properly stricken. *Anicom, Inc. v. Netwolves Corp.*, No. 00

C 2088, 2000 U.S. Dist. LEXIS 16547, 7-8 (N.D. Ill. Oct. 25, 2000) (striking failure to state a claim

defense where defense merely listed without explanation of its basis). "Even those courts that have

allowed a party to assert a defense of failure to state a claim, however, have not read the Federal

Rules so liberally as to allow the bare recitation of the legal standard ("failure to state a claim")

without a short and plain statement of the basis for the defense, as is required by Rule 8(a)."

*Builders Bank v. First Bank & Trust Co.*, No. 03 C 4959, 2004 U.S. Dist. LEXIS 5016, *9 (N.D. Ill.

Mar. 24, 2004). The motion to strike the defense of failure to state a claim must be granted.

## B.    Second Affirmative Defense

American's second affirmative defense states "counterclaim-plaintiff has failed to perform

conditions precedent and is thus not entitled to bring this lawsuit." This conclusory allegation is not

properly pleaded. "A denial of performance or occurrence shall be made specifically and with

particularity." Fed. R. Civ. P. 9(c). American fails to set forth any specific facts to support this

claim. "Bare bones conclusory allegations" should be stricken. *Heller*, 883 F.2d at 1295. The motion to strike the defense of failure to perform conditions precedent must be granted.

### C.    Third Affirmative Defense

American's third affirmative defense states "counterclaim-plaintiff is barred from recovery due to its prior material breaches of contract." An affirmative defense must include "either direct or inferential allegations respecting all material elements of the claim asserted." *Man Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999). American does not identify the contract Lexicon materially breached or how prior breaches bar Lexicon's counterclaims. Where the affirmative defense is merely listed without a short statement to explain the basis for the defense, it is properly stricken. *Anicom*, 2000 U.S. Dist. LEXIS 16547 at *7-8. American asserts Lexicon is fully aware of the contracts American claims were breached because American sued Lexicon for breach of contract. Even if true, American misses the mark. The affirmative defense must be properly pled to survive the motion to strike. This is true regardless of other circumstances in the litigation. The motion to strike the affirmative defense based on prior material breaches must be granted.

### D.    Fourth Affirmative Defense

American's fourth affirmative defense states "counterclaim-plaintiff is estopped from raising its claims because of its wrongful conduct and/or 'unclean-hands.'" Lexicon argues the unclean hands defense is insufficiently pled and is unavailable in this action at law. American's responds the unclean hands defense is entirely appropriate. The court need not decide whether the defense is available because it is improperly pled. Unclean hands is an equitable defense that must be pled with the specific elements required to establish the defense. *Yash Raj Films (USA) Inc., v. Atlantic Video*,

No. 03 C 7069, 2004 U.S. Dist. LEXIS 9739, *9 (N.D. Ill. May 27, 2004). American must plead Lexicon acted in a way that amounts to fraud, misconduct or bad faith. *Global Poly, Inc. v. Fred's Inc.*, No. 03 C 4561, 2004 U.S. Dist. LEXIS 3880, *17 (N.D. Ill. Mar. 11, 2004), *citing Ocean Atlantic Woodward Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 U.S. Dist. LEXIS 4964, at *8 (N.D. Ill. Mar. 31, 2003). If American suggests Lexicon committed fraud, the conclusory allegation that Lexicon acted with unclean hands fails to meet the particularity requirements of Fed. R. Civ. P. 9(b). *Global Poly*, 2004 U.S. Dist. LEXIS 3880 at *17. In any event, the basic allegation Lexicon acted with unclean hands fails to meet the notice requirement of Fed. R. Civ. P. 8(a). *Id.* Where the affirmative defense is merely listed without a short statement to explain the basis for the defense, it is properly stricken. *Anicom*, 2000 U.S. Dist. LEXIS 16547 at *7-8 (striking unclean hands defense where defense merely listed without explanation of its basis). The motion to strike the defense of unclean hands must be granted.

### E.     Fifth Affirmative Defense

American's fifth affirmative defense states "counterclaim-plaintiff has knowingly and intentionally acquiesced in the alleged acts complained of and thus waived any right to now object or otherwise seek redress." Waiver is an affirmative defense enumerated under Fed. R. Civ. P. 8(c). Waiver involves voluntary, intentional relinquishment of a known right. *Global Poly*, 2004 U.S. Dist. LEXIS 3880 at *15-16, *citing Ocean Atlantic*, 2003 U.S. Dist. LEXIS 4964 at *8; *Int'l Ins. Co. v. Peabody Int'l Corp.*, No. 87 C 464, 1991 U.S. Dist. LEXIS 1959, at *3 (N.D. Ill. Jan. 23, 1991). Lexicon argues the defense fails to put it on notice of the conduct allegedly constituting waiver. However, the defense states Lexicon "acquiesced" in the "acts complained of." Lexicon is presumably aware of the actions alleged in its counterclaim. Construing the pleadings liberally,

19

American could prove facts in support of the affirmative defense to defeat the counterclaim. The motion to strike the waiver defense must be denied.

### F.    Sixth Affirmative Defense

American's sixth affirmative defense states "counterclaim-plaintiff's causes of action have been waived, released or discharged, or counterclaim-plaintiff has otherwise ratified the acts of which it now complains." This catalogue of defenses is inappropriate. "Court have held time and time again that stringing together a long list of affirmative defenses is not sufficient to satisfy Rule 8(a)'s short and plain statement requirement." *Builders Bank*, 2004 U.S. Dist. LEXIS 5016 at *9; *see also Yash Raj Films (USA) Inc.*, 2004 U.S. Dist. LEXIS 9739 at *9. In addition, the waiver defense is redundant since American pleads waiver as its fifth affirmative defense. Fed. R. Civ. P. 12(f). American has not pled any facts that may support the claim that Lexicon released or discharged American from an existing obligation or ratified an act American performed. Ratification is an equitable defense that must be pled with the specific elements required to establish the defense. *Yash Raj Films (USA) Inc.*, 2004 U.S. Dist. LEXIS 9739 at *9. Affirmative defenses that are simply "bare bones conclusory allegations" must be stricken. *Heller*, 883 F.2d at 1295. The motion to strike the sixth affirmative defense must be granted.

### G.    Seventh Affirmative Defense

American's seventh affirmative defense states "counterclaim-plaintiff has failed to mitigate any damages that it may have suffered." Lexicon admits the standard for pleading mitigation is generally liberal. Lexicon Mot. at 6, n.2. American has sufficiently pled the mitigation defense. *See e.g., Wausau Ins. Co. v. Woods Equip. Co.*, No. 01 C 8009, 2002 U.S. Dist. LEXIS 4171, *6-7 (N.D. Ill. Mar. 14, 2002) (denying motion to strike failure to mitigate defense); *Tome Engenharia E*

*Tranportes v. Malki*, No. 94 C 7427, 1996 U.S. Dist. LEXIS 4585, *29-30 (N.D. Ill. ) (denying motion to strike affirmative defense "plaintiff has failed to mitigate its damages"). The motion to strike the mitigation defense must be denied.

### H.    Eighth Affirmative Defense

American's last affirmative defense states "counterclaim-defendant is entitled to an offset of an amount equal to or greater than any amounts claimed by counterclaim-plaintiff due to counterclaim-plaintiff [sic] wrongful conduct in its performance of contractual and other obligations." Offset is not an affirmative defense because it does not destroy the counterclaim-plaintiff's right of action. *Cipa Mfg. Corp. v. Allied Golf Corp.*, No. 94 C 6574, 1995 U.S. Dist. LEXIS 7604, *4-5 (N.D. Ill. May 24, 1995). American provides no authority to the contrary. The motion to strike the offset defense must be granted.

### I.    American's Request to Amend Affirmative Defenses

American contends it should be granted leave to file amended affirmative defenses. "Defenses are pleadings, and as such, leave to amend is freely granted as justice requires." *Heller*, 883 F.2d at 1294. Even if American can correct some of the technical problems with its affirmative defenses, the defenses must be dismissed with prejudice. Discovery closed on August 9, 2004, and all dispositive motions were due and filed on that date. There is no justification for allowing American to amend its affirmative defenses when Lexicon would not have an opportunity to respond or conduct discovery. *Anicom, Inc. v. NetWolves Corp.*, 2000 U.S. Dist. LEXIS 16547, 7-8 (N.D. Ill. 2000).

## CONCLUSION

Defendant's motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment on defendant's counterclaim is denied. Defendant's motion to strike plaintiff's affirmative defenses is granted in part and denied in part.

October 1, 2004                                        ENTER:

                                                       _Suzanne B. Conlon_
                                                       Suzanne B. Conlon
                                                       United States District Judge